# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY HAYNES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-cv-86-NJR ) |
| JOHN BALDWIN, JACQUELINE LASHBROOK, FRANK LAWRENCE, and JAMES CLAYCOMB, | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Gregory Haynes, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges Defendants denied him religious services and a religious diet, and retaliated against him when he filed grievances about his access to religious services. He asserts claims against the defendants under the First Amendment as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Plaintiff makes the following allegations in the Complaint: Plaintiff is a practicing Muslim and Defendants have been aware of his religious affiliation since entering IDOC (Doc. 1, p. 4). He wants to participate in Jum'ah Friday services, but when he first arrived at Menard, he was prohibited from attending services because he was in segregation (*Id*. at p. 8). He was then told that he would be added to a waiting list because there were not enough seats in chapel (*Id*.). Lashbrook allowed Plaintiff to attend services, but only once there was an open seat available and he was only allowed to attend one Friday per month instead of on a weekly basis as mandated by his religious beliefs (*Id*. at pp. 8-9). Plaintiff was also unable to obtain a siwak (tooth stick for brushing teeth) and prayer oil, which is required before attendance in his religious services (*Id*. at p. 5).

Plaintiff wrote a grievance about the restrictions on his services and Claycomb retaliated against him by removing him and other inmates from the Jum'ah services list (Doc. 1, p. 9). Services are regularly cancelled by Claycomb and when Plaintiff asked for Islamic literature to supplement his services, Claycomb only provided Plaintiff with Christian literature (*Id*. at pp. 9-10).

Menard also offers four basic menus: regular (which includes pork and pork by products), vegetarian, kosher, and medical menu (which requires a doctor's prescription) (Doc. 1, p. 6). The prison does not offer a Halal menu for Muslims. The alternative menus do not meet the dietary needs of Muslim inmates nor are they nutritionally adequate (*Id*. at p. 7). The kosher diet does have similar requirements to Islam for preparation of food to prevent the cross-contamination of foods. When Plaintiff submitted a request for a kosher diet, Claycomb subjected him to a written

test to determine if his Islamic beliefs were sincere (*Id*. at p. 10). Claycomb and Lawrence then denied his request for a kosher diet (*Id*.).

Plaintiff also alleges that Baldwin, Lashbrook, and Lawrence created and implemented policies and practices which substantially burdened his practice of religion including: hiring and retaining chaplains who failed to meet the requirements of RLUIPA, denying services due to overcrowding, adorning the chapel with Christian material while placing Islamic materials under lock and key, allowing funds for Christian celebrations but not Islamic feasts, denying Muslim inmates fellowship, denying prayer oil and siwaks, pressuring Muslim inmates to consume non-Halal meals, locking down the facilities during Ramadan and providing nutritionally inadequate meals, retaliating against inmates who file lawsuits about religious matters, depriving Muslim inmates of religious activities when they complain, selling food products in the commissary labeled Halal which are not fully reviewed for authenticity, and providing religious accommodations only after passing a test of sincerity (*Id*. at pp. 14-15).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following five counts:

**Count 1:** **James Claycomb and Jacqueline Lashbrook denied Plaintiff religious services in violation of the First Amendment and RLUIPA.**

**Count 2:** **James Claycomb and Frank Lawrence denied Plaintiff a Halal diet in violation of the First Amendment and RLUIPA.**

**Count 3:** **James Claycomb retaliated against Plaintiff in violation of the First Amendment in response to Plaintiff's grievances about his religious services.**

**Count 4:** **John Baldwin, Jacqueline Lashbrook, and Frank Lawrence created policies and practices which burdened Plaintiff's**

>practice of religion in violation of the First Amendment and RLUIPA.

Count 5: State law negligence claim against James Claycomb, Jacqueline Lashbrook, and Frank Lawrence.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

### Counts 1, 2, and 4

The Court finds that the allegations in the Complaint state a viable claim against James Claycomb, Frank Lawrence, Jacqueline Lashbrook, and John Baldwin in Counts 1, 2, and 4 for violation of his First Amendment rights. Plaintiff also states viable RLUIPA claims for denying his access to religious services and meals. 42 U.S.C. § 2000cc-1. RLUIPA does not authorize a suit for money damages against defendants in their individual capacities. *Grayson v. Schuler,* 666 F.3d 450, 451 (7th Cir. 2012); *Maddox v. Love,* 655 F.3d 709, 717 (7th Cir. 2011). But a court may order injunctive relief to correct a violation of RLUIPA. Therefore, Plaintiff may not pursue a claim for money damages against any defendant under RLUIPA. Instead, the Court will add Alex Jones, in his official capacity as Warden of Menard, to the case for Counts 1, 2, and 4 for purposes of implementing any injunctive relief awarded on Plaintiff's RLUIPA claims. To the extent that Plaintiff has attempted to state an official capacity claim against anyone else, those claims are dismissed.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 3**

Plaintiff also states a viable claim for retaliation against James Claycomb. *Antoine v. Ramos*, 497 F. App'x 631, 633-4 (7th Cir. 2012); *See McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009)).

**Count 5**

At this stage, Plaintiff also states a state law negligence claim against Claycomb, Lashbrook, and Lawrence. *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007).

**Pending Motions**

Plaintiff has not submitted a motion for appointment of counsel but has submitted documents in support of a motion (Doc. 3). To the extent Plaintiff seeks counsel, he has submitted letters he has sent to counsel seeking representation. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, counsel is not needed at this time because the defendants have not yet been served and a discovery schedule has not been entered. Thus, Plaintiff's request for counsel is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

**Disposition**

For the reasons stated above, Count 1 shall proceed against Jacqueline Lashbrook, Alex Jones, and James Claycomb. Count 2 shall proceed against Frank Lawrence, Alex Jones, and James Claycomb. Count 3 shall proceed against James Claycomb. Count 4 shall proceed against

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Jacqueline Lashbrook, Frank Lawrence, John Baldwin, and Alex Jones. Count 5 shall proceed against Jacqueline Lashbrook, Frank Lawrence, and James Claycomb. The Clerk is **DIRECTED** to add Alex Jones (official capacity only) for purposes of Counts 1, 2, and 4.

The Clerk of Court shall prepare for Defendants John Baldwin, Jacqueline Lashbrook, Frank Lawrence, James Claycomb, and Alex Jones (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/16/2020**

*[Signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**